| | | |
|---|---|---|
| ANFINY J. ESHOO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 20CV6192 |
| | ) | Honorable Gary S. Feinerman |
| THE VILLAGE OF ARLINGTON | ) | Magistrate: |
| HEIGHTS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT, VILLAGE OF ARLINGTON HEIGHTS, ANSWER AND AFFIRMATIVE DEFENSES TO THE PLAINTIFF'S COMPLAINT AT LAW

NOW COMES the Defendant, Village of Arlington Heights, by and through its attorneys, O'REILLY LAW OFFICES, LLC., and for its answer to the Plaintiff, ANFINY J. ESHOO's, Complaint, states as follows:

### INTRODUCTION

1.  This action seeks redress for the improper termination of the Plaintiff's employment and wrongful discrimination in employment by the Defendant, THE VILLAGE OF ARLINGTON HEIGHTS, in violation of the Plaintiff's rights of equal protection in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000 *et seq.* ("Title VII"), in violation of his rights under The Family Medical Leave Act ("FMLA"), as amended, 42 U.S.C. § 2601, *et seq.*, and in violation of the Illinois Human Rights Act ("IHRA") 775 ILCS 5/1-101 *et seq.*

**ANSWER:** Defendant admits that Plaintiff's action purports to seek redress under the above cited laws, but denies the merit of Plaintiff's allegations.

### JURISDICTION AND VENUE

2.  This Court has jurisdiction of the Federal claims herein pursuant to the provisions of Title VII, 42 U.S.C. §§ 2000 *et seq.*, the provisions of the FMLA, 29 U.S.C. § 2601, *et seq.*, and 28 U.S.C. § 1331. For the supplemental Illinois claims, jurisdiction is conferred upon the

Court by 28 U.S.C. § 1367.

**ANSWER:** Defendant admits the jurisdiction of the Court.

3.      On or about August 28, 2019, the Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR"). On or about January 8, 2020, said Charge of Discrimination was amended.

**ANSWER:** Defendant admits the allegations in paragraph 3.

4.      On or about August 6, 2020, the EEOC issued the Plaintiff a Notice of Right-to- Sue on his EEOC Charge, as amended. (A copy of the Plaintiff's Notice is attached as "Exhibit A.") The Plaintiff's cause of action was filed within 90 days of receiving his Notice of Right-to- Sue.

**ANSWER:** Defendant admits the allegations in paragraph 4.

5.      Venue herein is proper under 28 U.S.C.A. § 1391(b). The unlawful practices complained of occurred within this District, the employment records relevant are maintained and administered within this District, the Plaintiff is a resident of this District, and the Defendant's principle place of business is within this District.

**ANSWER:** Defendant admits that the venue is proper. The defendant denies that it engaged in unlawful practices with regard to the plaintiff at any time.

**PARTIES**

6.      The Plaintiff, ANFINY J. ESHOO ("ESHOO"), is a male citizen of the State of Illinois, residing in the County of Cook, and is of Assyrian ancestry, his parents having immigrated from Iraq. As an Assyrian, ESHOO is protected by Title VII and the IHRA from adverse employment decisions and/or actions "because of" or "on the basis of" his national origin and race, dark olive.

**ANSWER:** Defendant has insufficient knowledge of the allegations in paragraph 6, and therefore, denies the same.

7.      The Defendant, THE VILLAGE OF ARLINGTON HEIGHTS, ("ARLINGTON HTS.") is an Illinois Home Rule Municipality under the laws of the State of Illinois. ARLINGTON HTS. consists of numerous departments, one of which is the ARLINGTON HEIGHTS POLICE DEPARTMENT (the "POLICE DEPARTMENT").

**ANSWER:** Defendant admits the allegations in paragraph 7.

8.     From on or about May 24, 2016, through January 6, 2020, ESHOO was an employee of ARLINGTON HTS. as defined by Title VII, 42 U.S.C. § 2000e(f), and as defined by the IHRA, 775 ILCS 5/2-101(A).

**ANSWER:**  Defendant admits the allegations in paragraph 8.

9.     At all times relevant hereto, ARLINGTON HTS. is and remains an employer as defined by Title VII, 42 U.S.C. § 2000e(b), and as defined by the IHRA, 775 ILCS 5/2-101(B).

**ANSWER:** Defendant admits the allegations in paragraph 9.

## FACTS

10.     On or about May 24, 2016, ESHOO was hired by Defendant, ARLINGTON HTS., as a Patrol Officer with the POLICE DEPARTMENT. ESHOO was a lateral hire from the Village of Maywood's Police Department, having worked there as a Patrol Officer for over two years.

**ANSWER:**  Defendant admits the allegations in paragraph 10.

11.     During the term of his employment with the POLICE DEPARTMENT, ESHOO was the only Patrol Officers employed by the POLICE DEPARTMENT with an Assyrian ancestry. The Patrol Officers employed by the POLICE DEPARTMENT are primarily white of American ancestry.

**ANSWER:** Defendant denies the allegations in paragraph 11.

12.     Almost immediately upon the commencement of ESHOO's employment with the POLICE DEPARTMENT, ESHOO was questioned about his darker complexion and what his national origin was. When the other Patrol Officers and Command Staff learned that ESHOO was Assyrian from Iraq the derogative comments about ESHOO's national origin and race began. Throughout ESHOO's employment, ESHOO was subjected to repeated and continuous comments about his national origin and race, which included, without limitation:

   a.     being called and referred to as a "Terrorist;"
   b.     being called and referred to as a "Goat Fucker;"
   c.     being called and referred to as a "Arab;"
   d.     being called and referred to as a "Dirty Arab;"
   e.     being called and referred to as a "Muslim;"
   f.     being called and referred to as a "Dirty Muslim;"
   g.     being called and referred to as a "Camel;"
   h.     being called and referred to as a "Camel Jockey;"
   i.     being called and referred to as a "Sand Nigger;"

| | |
|---|---|
| j. | being called and referred to as the "Unabomber;" |
| k. | being called and referred to as "Al Qaeda;" |
| l. | being called and referred to as "Saddam Hussein;" |
| m. | being called and referred to as "Dirty Middle Eastern;" |
| n. | being called and referred to as "Syrian;" |
| o. | being called and referred to as "Osama bin Laden;" |
| p. | being called and referred to as "carpet rider;" |
| q. | being called and referred to as "Aladdin;" |
| r. | referred to ESHOO's girlfriend, who was also from Iraq, as "Princess Jasmine;" |
| s. | asked ESHOO if he was dating his "cousin" because his girlfriend was also from Iraq; and asked if it was "an arranged marriage;" and "did you meet at a mosque;" |
| t. | being called and referred to as the "Taliban." |

**ANSWER:** Defendant denies each and every allegation and inference in paragraph 12.

13.    Almost immediately upon the commencement of ESHOO's employment with the POLICE DEPARTMENT, ESHOO was criticized by other Patrol Officers and Command Staff for the vehicle he drove. ESHOO drove a 2014 Dodge Charger with tinted windows. ESHOO was told to "get rid of your shine car, you aren't in Maywood anymore." ESHOO's car was called a "ghetto vehicle." Because of the constant criticism and comments, ESHOO traded his Dodge Charger in for a white Jeep Wrangler, which the Patrol Officers immediately referred to as ESHOO's "Barbie Jeep."

**ANSWER:** Defendant admits that at certain times during his employment at the Village of Arlington Heights Police Department, he drove a Dodge Charger and a Jeep Wrangler. The defendant denies each and every remaining allegation and inference in paragraph 13.

14.    ESHOO also owned a 2015 Honda Grom (a small 125cc motorcycle), and when he drove it to work once, ESHOO was harassed by Patrol Officer Kevin Sullivan who stated: "nice clown bike do you park that next to your carpet in the garage?" ESHOO was also asked "how are you able to fit your camel in your garage."

**ANSWER:** Defendant admits that Eshoo owned a 2015 Honda Grom. Defendant denies all remaining allegations and inferences contained in paragraph 14.

15.    Patrol Officers would play Muslim music on their computers in the presence of ESHOO, and laugh and make inappropriate comments about ESHOO's national origin.

**ANSWER:.** Defendant denies all allegations and inferences contained in paragraph 15.

16.    Management, including but not limited to Police Chief Gerald Mourning, Deputy Chief

Pecora, Commander Henderson, Commander Pinnello, Commander Buczynski, Sergeant Mandel, Sergeant McGrath, Sergeant Jasper, Sergeant Mack, Sergeant Sjodin, and Sergeant Nelson which were employees of Defendant ARLINGTON HTS., were present for, participated in, sanctioned and/or allowed the disparaging, demeaning and harassing behavior and comments referenced herein. Despite management's awareness, such behavior was allowed to continue and no remedial action was taken to stop such behaviors.

**ANSWER:** Defendant denies each and every allegation and inference contained in paragraph 16.

17. On October 30, 2018, ESHOO greeted then Police Chief Gerald Mourning and Village Manager Randall Recklaus as they walked off the elevator into the patrol area of the old Police Department building. Chief Mourning commented on ESHOO's beard, and said "you look like a terrorist." This comment was said loud enough were other officers at the front desk and patrol areas were able to hear the Chief's comment. The comment was quickly escalated throughout the POLICE DEPARTMENT, and ESHOO was referred to and called a "terrorist" or the "terrorist" consistently throughout the remainder of his employment.

**ANSWER:** The defendant denies that Village Manager, Randall Recklaus was present for the alleged incident on October 30, 2018. The defendant admits that on October 30,2018, Police Chief Mourning commented on Eshoo's beard and stated "you look like a terrorist." The defendant has insufficient knowledge whether this comment was overheard by anyone and, therefore, denies the allegations regarding the same. The defendant denies each and every remaining allegation and inference contained in paragraph 17.

18. On October 31, 2018, ESHOO found in his mailbox located within the Police Department building, a copy of a photograph of bearded terrorist suspects from the 911 bombings (a copy of the photo is attached as "Exhibit B"); and an Islamic brochure entitled "3 Facts About Sikhi" (a copy of the brochure is attached as "Exhibit C"). ESHOO gave the documents to his shift Commander Pinnello, and told him that this behavior needed to stop. Commander Pinnello threw the documents into the garbage, which ESHOO later retrieved, and did nothing to address or stop the improper conduct.

**ANSWER:** The defendant denies each and every allegation and inference in paragraph 18.

19. ESHOO often found camel stickers attached to his mailbox located within the Police Department building, and camel stickers placed on his shelf in the locker room located within the Police Department building (photos of examples of the camel stickers are

attached as "Exhibit D").

**ANSWER:**   The defendant denies each and every allegation and inference in paragraph 19.

20.   ESHOO found a "goat milking manual" in his mailbox located within the Police Department building (the first page of the 161 page "goat milking manual" is attached as "Exhibit E").

**ANSWER:**   The defendant denies each and every allegation and inference in paragraph 20.

21.   On or about April 18, 2019, on the computer located within the Police squad driven by ESHOO, someone made the wallpaper a picture of a police officer riding a camel (a copy of the photo is attached as "Exhibit F").

**ANSWER:**   The defendant denies each and every allegation and inference in paragraph 21.

22.   On or about May 19, 2019, on the computer located within the Police squad driven by ESHOO, someone made the wallpaper a picture of someone riding a camel (a copy of the photo is attached as "Exhibit G").

**ANSWER:**   The defendant denies each and every allegation and inference in paragraph 22.

23.   In April 2019, ESHOO was instructed by Sergeant Jasper to remove dead cats out of an uninhabitable house. ESHOO advised the Sergeant Jasper he was allergic to cats. Sergeant Jasper stated, "then you better wear a hazmat suit." ESHOO removed the dead cats from the house. The following day, while discussing the deplorable condition and smell of the house, Commander Henderson said to ESHOO, in the presence of Sergeant Jasper and Patrol Officer Chojnowski, "good thing we sent the dirty Arab in there."

**ANSWER:**   The defendant admits that in April, 2019, Eshoo, as well as another patrol officer, were instructed by Sergeant Jasper to remove dead cats from a house while wearing hazmat suits. The defendant denies each and every remaining allegation and inference in paragraph 23.

24.   Because of ESHOO's national origin and race ARLINGTON HTS. limited ESHOO's opportunities for career development as compared to his other Patrol Officers that were not Assyrian from Iraq. ESHOO was improperly denied participation in or promotion to these assignments that severely curtailed ESHOO's ability to advance within the POLICE DEPARTMENT:

    a.   Power-Shift position, provided to a Patrol Office with less seniority than ESHOO although it was a seniority-based position.

    b.   Denied position of Field Training Officer on two separate occasions.

    c.   Denied enrollment in TacMed Instructor course.

d.      Denied enrollment in Firearms Instructor course.

e.      Denied enrollment in the Reed School of Interrogation on two separate occasions.

f.      Denied position of Detective on two separate occasions.

g.      Denied position of K-9 Officer.

**ANSWER:** Defendant denies each and every allegation and inference in paragraph 24.

25.      Because of ESHOO's national origin and race, ESHOO was also subjected to different and more negative terms and conditions of his employment and was provided reprimands and unjust written disciplinary notices while other Patrol Officers that were not Assyrian from Iraq were not reprimanded for the same or similar acts.

**ANSWER:** Defendant denies each and every allegation and inference in paragraph 25.

26.      On or about April 12, 2019, ESHOO was apprised of charges brought against him arising out of a call that occurred on February 22, 2019, for his alleged failure to properly enforce an Order of Protection.

**ANSWER:** Defendant admits that on April 12, 2019, Eshoo was advised that there was an internal affairs investigation into his conduct relating to a call on February 22, 2019. The defendant denies each and every remaining allegation and inference in paragraph 26.

27.      On or about May 28, 2019, ESHOO filed a written complaint with the Director of Human Resources for ARLINGTON HTS. setting forth his allegations of national origin and race discrimination, and hostile work environment.

**ANSWER:** The Defendant denies the allegations and inferences in paragraph 27.

28.      On or about July 25, 2019, ESHOO was apprised of charges brought against him arising out of a call that occurred on July 21, 2019, for his alleged failure to conduct a proper preliminary investigation of a Domestic Battery.

**ANSWER:** Defendant admits that on July 25, 2019, Eshoo was advised of an internal affairs investigation into his conduct relative to a call on July 21, 2019. The defendant denies each and every remaining allegation in paragraph 28.

29.      On or about July 25, 2019, ESHOO was placed on Administrative Leave, with pay, pending the outcome of an Internal Affairs investigation of the alleged July 21, 2019 incident.

**ANSWER:** Defendant admit the allegations in paragraph 29.

30.      On or about September 3, 2019, ESHOO received a memo from Mary Rath, Director of Human Resources for ARLINGTON HTS., regarding the conclusion of the alleged

investigation into ESHOO's May 28, 2019 written complaint, which stated in part, without limitation:

<ol type="a">
<li>"[W]hile there has been conduct by various members of the Police Department (what was described as "banter") which could be considered contrary to the Village's Anti-Harassment Policy, there has been no adverse employment action taken against you or negative treatment of you as result of your race, ethnicity and/or national origin."</li>
<li>"There is no dispute that former Police Chief Gerald Mourning's comment to you in October 2018, where he told you that you looked like a terrorist, was inappropriate."</li>
<li>"In light of that comment and the significant amount of inappropriate banter that takes place within the Police Department, Ms. Underwood has recommended anti-harassment training for both supervisory and non- supervisory employees in the Department."</li>
</ol>

**ANSWER:** The defendant admits that Eshoo was sent a memo from Mary Rath, Director of Human Resources for the Village, relating to Eshoo's allegations of harassment based upon his race, ethnicity and/or national origin and admit that the quotes from the memo are portions of the language contained in the memo. The defendant denies that Eshoo submitted a written complaint on May 28, 2019 and denies that the language in the memo is complete.

31.    On or about December 6, 2019, having requested FMLA leave to care for his father due to his serious health condition, ESHOO was provided a FMLA Notice of Eligibility and Rights Responsibilities (form WH-381 from the U.S. Department of Labor), from ARLINGTON HTS.' employer representative, Joan Bokina. The FMLA Notice indicated that ESHOO was eligible for FMLA leave, and that he was required to provide a completed Certification of Health Care Provider for Family Member's Serious Health Condition by December 31, 2019. The FMLA Notice also indicated that "Once we obtain the information from you as specified above, we will inform you, within 5 business days, whether your leave will be designated as FMLA leave and count towards your FMLA leave entitlement."

**ANSWER:** The defendant denies Eshoo formally requested FMLA leave on December 6, 2019, but admit remaining allegations in paragraph 31.

32.    On or about December 10, 2019, ESHOO was advised, through his union appointed attorney, that ARLINGTON HTS. was willing to put ESHOO on unpaid FMLA leave, but

only if ESHOO immediately withdrew his EEOC Charge of Discrimination.

**ANSWER:** Defendant denies each and every allegation and inference in paragraph 32.

33. On or about December 23, 2019, ESHOO returned to ARLINGTON HTS.' employer representative, Joan Bokina, the completed Certification of Health Care Provider for Family Member's Serious Health Condition, together with the completed Village of Arlington Heights Family and Medical Leave Act Employee Request form, which identified the dates of leave as December 6, 2019 through February 29, 2020.

**ANSWER:.** Defendant admits that Eshoo provided a Certification of Health Care Provider for Family Member's Serious Health Condition form and a Village of Arlington Heights Family and Medical Leave Act Employee Request Form identifying his dates requested for leave. The defendant denies all remaining allegations in paragraph 33.

34. On or about January 6, 2020, ESHOO received a letter from Chief Pacora stating, "you are hereby terminated from employment with the Village of Arlington Heights effective January 6, 2020."

**ANSWER:** Defendant admit that the allegations in paragraph 34 contain a portion of a letter from Chief Pacora.

**COUNT I**
**National Origin Discrimination – Hostile Work Environment Title VII and the Illinois Human Rights Act**

35. Plaintiff repeats and re-alleges paragraphs 1-34 as if they are set forth herein.

**ANSWER:** The defendant restates its answers to paragraphs 1-34 as its answer to paragraph 35 as though fully set forth herein.

36. Throughout Plaintiff's employment, Plaintiff was exposed to derogatory, degrading and inappropriate comments and behavior because of his national origin, Assyrian from Iraq, as described herein.

**ANSWER:** Defendant denies the allegations in paragraph 36.

37. The discriminatory behaviors and comments complained of herein were unwelcomed and made Plaintiff feel embarrassed, anxious and uncomfortable.

**ANSWER:** Defendant denies the allegations in paragraph 37.

38. The severe and pervasive discriminatory behaviors and comments complained of herein affected Plaintiff's ability to perform his job duties and created a hostile work environment.

**ANSWER:** Defendant denies the allegations in paragraph 38.

39. Management was present for, participated in, sanctioned and/or allowed many instances of national origin discrimination complained of herein.

**ANSWER:** Defendant denies the allegations in paragraph 39.

40. Defendant failed to implement any policy to prevent or eliminate national origin discriminatory behavior within the workplace.

**ANSWER:** Defendant denies the allegations in paragraph 40.

41. Plaintiff objected to and complained about the national origin discriminatory behavior and no remedial action was taken.

**ANSWER:** Defendant denies the allegations in paragraph 41.

42. Defendant's course of conduct showed a disregard for Plaintiff's right to have employment free from national origin discrimination.

**ANSWER:** Defendant denies the allegations in paragraph 42.

43. The foregoing constitutes impermissible national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and the Illinois Human Rights Act, 775 ILCS 5/2-101 et seq.

**ANSWER:** Defendant denies the allegations in paragraph 43.

44. The discriminatory acts that constitute the Defendant's pattern and/or practice of national origin discrimination have occurred both within and outside the liability period in this case.

**ANSWER:** Defendant denies the allegations in paragraph 44.

45. The above-describe unwelcome national origin discrimination created an intimidating, oppressive, hostile and offensive work environment, which affected the Plaintiff's emotional and physical well-being, and which interfered with the Plaintiff's job performance, and resulted in adverse employment actions being taken against the Plaintiff, including, limiting Plaintiff's opportunities for career development, suspending Plaintiff's employment, and terminating the Plaintiff's employment.

**ANSWER:** Defendant denies the allegations in paragraph 45.

46. Defendant's discriminatory conduct as described above, in violation of Title VII and the IHRA has caused the Plaintiff to suffer a loss of pay, benefits, and prestige.

**ANSWER:** Defendant denies the allegations in paragraph 46.

47. Because of Defendant's unlawful employment practices complained of herein, Plaintiff

ESHOO suffered, and continues to suffer, from severe emotional distress, embarrassment, mental anguish and humiliation.

**ANSWER:** Defendant denies the allegations in paragraph 47.

48. Defendant's unlawful employment practices were intentional and done with malice or with reckless indifference to the Plaintiff's rights under Title VII and the IHRA.

**ANSWER:** Defendant denies the allegations in paragraph 48.

WHEREFORE, Defendant, VILLAGE OF ARLINGTON HEIGHTS, prays for judgment in its favor and against the Plaintiff plus costs.

**COUNT II**

**Race Discrimination – Hostile Work Environment Title VII and the Illinois Human Rights Act**

49. Plaintiff repeats and re-alleges paragraphs 1-34 as if they are set forth herein.

**ANSWER:** The defendant restates its answers to paragraphs 1-34 as its answer to paragraph 49 as though fully set forth herein.

50. Throughout Plaintiff's employment, Plaintiff was exposed to derogatory, degrading and inappropriate comments and behavior because of his race, dark olive, because he is Assyrian from Iraq, as described herein.

**ANSWER:** Defendant denies the allegations in paragraph 50.

51. The discriminatory behaviors and comments complained of herein were unwelcomed and made Plaintiff feel embarrassed, anxious and uncomfortable.

**ANSWER:** Defendant denies the allegations in paragraph 51.

52. The severe and pervasive discriminatory behaviors and comments complained of herein affected Plaintiff's ability to perform his job duties and created a hostile work environment.

**ANSWER:** Defendant denies the allegations in paragraph 52.

53. Management was present for, participated in, sanctioned and/or allowed many of the instances of race discrimination complained of herein.

**ANSWER**: Defendant denies the allegations in paragraph 53.

54. Defendant failed to implement any policy to prevent or eliminate racial discriminatory behavior within the workplace.

**ANSWER:** Defendant denies the allegations in paragraph 54.

55. Plaintiff objected to and complained about the racial discriminatory behavior and no remedial action was taken.

**ANSWER:** Defendant denies the allegations in paragraph 55.

56.     Defendant's course of conduct showed a disregard for Plaintiff's right to have employment free from race discrimination.

**ANSWER:** Defendant denies the allegations in paragraph 56.

57.     The foregoing constitutes impermissible race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and the Illinois Human Rights Act, 775 ILCS 5/2-101 et seq.

**ANSWER:** Defendant denies the allegations in paragraph 57.

58.     The discriminatory acts that constitute the Defendant's pattern and/or practice of race discrimination have occurred both within and outside the liability period in this case.

**ANSWER:** Defendant denies the allegations in paragraph 58.

59.     The above-describe unwelcome race discrimination created an intimidating, oppressive, hostile and offensive work environment, which affected the Plaintiff's emotional and physical well-being, and which interfered with the Plaintiff's job performance, and resulted in adverse employment actions being taken against the Plaintiff, including, limiting Plaintiff's opportunities for career development, suspending Plaintiff's employment, and terminating the Plaintiff's employment.

**ANSWER:**     Defendant denies the allegations in paragraph 59.

60.     Defendant's discriminatory conduct as described above, in violation of Title VII and the IHRA has caused the Plaintiff to suffer a loss of pay, benefits, and prestige.

**ANSWER:** Defendant denies the allegations in paragraph 60.

61.     Because of Defendant's unlawful employment practices complained of herein, Plaintiff ESHOO suffered, and continues to suffer, from severe emotional distress, embarrassment, mental anguish and humiliation.

**ANSWER:** Defendant denies the allegations in paragraph 61.

62.     Defendant's unlawful employment practices were intentional and done with malice or with reckless indifference to the Plaintiff's rights under Title VII and the IHRA.

**ANSWER:** Defendant denies the allegations in paragraph 62.

WHEREFORE, Defendant, VILLAGE OF ARLINGTON HEIGHTS, prays for judgment in its favor and against the Plaintiff plus costs.

**COUNT III**
**Retaliation**
**Title VII and the Illinois Human Rights Act**

63.     Plaintiff repeats and re-alleges paragraphs 1-34 as if they are set forth herein.

**ANSWER:** The defendant restates its answers to paragraphs 1-34 as its answer to paragraph 63 as though fully set forth herein.

64.     In response to Plaintiff's protected reports, complaints and objections to national origin discrimination, race discrimination, and demeaning and discriminatory behavior and comments related to his national origin and race, Defendant took retaliatory actions which included, but are not limited to:

    a.    subjecting Plaintiff to different, demeaning and more negative terms and conditions of employment that his similarly situated white American counterparts;

    b.    subjecting Plaintiff to harsher and more demanding employment standards than his similarly situated white American counterparts;

    c.    subjecting Plaintiff to unwarranted and unjust discipline;

    d.    ostracizing Plaintiff from the work environment;

    e.    limiting Plaintiff's opportunities for career development;

    f.    suspending Plaintiff's employment;

    g.    demanding that Plaintiff withdraw his EEOC Charge of Discrimination in order to obtain leave he was otherwise entitled to; and

    h.    terminating the Plaintiff's employment.

**ANSWER:** Defendant denies the allegations in paragraph 64.

65.     Management was present for, participated in, sanctioned, allowed, knew and/or should have known of such retaliation but took no remedial action.

**ANSWER:** Defendant denies the allegations in paragraph 65.

66.     Defendant's conduct toward Plaintiff showed a willful and/or reckless disregard for Plaintiff's right to employment free from impermissible retaliatory conduct.

**ANSWER:** Defendant denies the allegations in paragraph 66.

67.     Defendant failed to implement any policy that prevents impermissible retaliation for employees who complain about national origin discrimination, race discrimination and/or sexual harassment.

**ANSWER:** Defendant denies the allegations in paragraph 67.

68.     The foregoing constitutes impermissible retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and the Illinois Human Rights

Act, 775 ILCS 5/2-101 et seq.

**ANSWER:** Defendant denies the allegations in paragraph 68.

69. Because of Defendant's unlawful employment practices complained of herein, Plaintiff ESHOO has lost wages, benefits and career experience, and has suffered, and continues to suffer from severe emotional distress, embarrassment, mental anguish and humiliation.

**ANSWER:** Defendant denies the allegations in paragraph 69.

WHEREFORE, Defendant, VILLAGE OF ARLINGTON HEIGHTS, prays for judgment in its favor and against the Plaintiff plus costs.

## COUNT IV
### Interference with the Right to take FMLA Leave

70. Plaintiff repeats and re-alleges paragraphs 1-34 as if they are set forth herein.

**ANSWER:** The defendant restates its answers to paragraphs 1-34 as its answer to paragraph 70 as though fully set forth herein.

71. The FMLA guarantees eligible employees 12 weeks of leave in a 1-year period following certain events, including a family member's serious illness. 29 U.S.C. § 2612(a)(1).

**ANSWER:** Defendant admit the rights guaranteed under the FMLA, but deny that said rights are completely or properly set forth in paragraph 71.

72. 29 U.S.C. § 2615(a)(1) provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or denies the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 C.F.R. § 825.220(a)(1).

**ANSWER:** Defendant admits the provisions of the FMLA.

73. ARLINGTON HTS. is a covered employer under the FMLA because it is engaged in commerce or in an industry affecting commerce and employs 50 or more employees for each working day during each of 20 or more calendar workweeks in 2018 or the preceding calendar year. 29 U.S.C. § 2611(4)(A)(i); 29 C.F.R. § 825.104(a).

**ANSWER:** Defendant admits that Arlington Heights is a covered employer under the FMLA.

74. ESHOO was an employee of ARLINGTON HTS. that was eligible for FMLA leave because he was employed by ARLINGTON HTS. for at least 12 months and worked at least 1,250 hours during the 12-month period prior to his request for FMLA leave. 29 U.S.C. § 2611(2)(A); 29 C.F.R. § 825.110(a).

**ANSWER:** Defendant admits that Eshoo was eligible to make application under the FMLA, but

denies all remaining allegations and inferences in paragraph 74.

75.     ESHOO was eligible for FMLA Leave because he worked at least 1250 hours in a year at ARLINGTON HTS. worksite with at least 50 people in a 75-mile radius. 29 U.S.C. 2611(2)(B)(ii); 29 C.F.R. § 825.110(a).

**ANSWER:**  Defendant admits that Eshoo was eligible to make application under the FMLA, but denies all remaining allegations or inferences in paragraph 75.

76.     ESHOO was entitled to FMLA Leave because his father had a serious health condition and was incapable of self-care. 29 U.S.C. § 2611(7) and (12); 29 C.F.R. § 825.122(d).

**ANSWER:**  Defendant has insufficient knowledge of the allegations in paragraph 76 and, therefore, denies the same.

77.     ESHOO's father was incapable of self-care because he required active assistance or supervision to provide daily self-care in three or more activities of daily living or instrumental activities of daily living while he was under treatment for his condition. 29 C.F.R. § 825.122(d)(1).

**ANSWER:**  Defendant has insufficient knowledge of the allegations in paragraph 77 and, therefore, denies the same.

78.     A licensed physician certified that ESHOO's father's condition was a "serious health condition" within the meaning of the FMLA, a condition that ultimately claimed ESHOO's father's life. 29 U.S.C. § 2611(11); 29 C.F.R.§ 825.113.

**ANSWER:**  Defendant has insufficient knowledge of the allegations in paragraph 78 and, therefore, denies the same.

79.     ESHOO gave appropriate notice of his need to be absent from work by providing notice verbally of his need for FMLA leave, by providing the completed FMLA Certificate of Health Care Provider for Family Member's Serious Health Condition (Form WH-380-F from the U.S. Department of Labor), and the completed Village of Arlington Heights Family and Medical Leave Act Employee Request form. 29 U.S.C. § 2612(e)(2); 29 C.F.R. § 825.303.

**ANSWER:**  Defendant admits Eshoo provided the FMLA Certificate of Health Care Provider for Family Member's Serious Health Condition (Form WH-380-F from the U.S. Department of Labor), and the completed Village of Arlington Heights Family and Medical Leave Act Employee Request form. 29 U.S.C. § 2612(e)(2); 29

C.F.R. § 825.303, but denies the remaining allegations in paragraph 79.

80.    ARLINGTON HTS. violated the FMLA because it failed to designate leave as FMLA-qualifying and failed to give notice of the designation to ESHOO within five business days after ARLINGTON HTS. acquired knowledge that ESHOO's leave may be for a FMLA-qualifying reason. 29 C.F.R. § 825.300(d); § 825.301(a).

**ANSWER:** Defendant denies each and every allegation and inference contained in paragraph 80.

81.    ARLINGTON HTS. violated the FMLA because it improperly failed to grant ESHOO's request for the FMLA leave he was entitled to under the FMLA. 29 U.S.C. § 2615; 29 C.F.R. § 825.220.

**ANSWER:** Defendant denies each and every allegation contained in paragraph 81.

82.    ARLINGTON HTS. violated the FMLA because it improperly terminated ESHOO's employment with ARLINGTON HTS. because he requested leave he was entitled to under the FMLA. 29 U.S.C. § 2615; 29 C.F.R. § 825.220.

**ANSWER:** Defendant denies each and every allegation contained in paragraph 82.

83.    Due to ARLINGTON HTS.' improper failure to grant ESHOO's request for FMLA leave, its improper termination of ESHOO's employment, and its other violations of the FMLA, ESHOO suffered mental anguish, emotional distress, humiliation, emotional pain and suffering, inconvenience, lost wages and benefits, damage to his reputation, and other consequential damages.

**ANSWER:** Defendant denies each and every allegation contained in paragraph 83.

84.    The actions of ARLINGTON HTS. were intentional, willful, malicious and showed deliberate indifference to ESHOO's rights under the FMLA.

**ANSWER:** Defendant denies each and every allegation contained in paragraph 84.

WHEREFORE, Defendant, VILLAGE OF ARLINGTON HEIGHTS, prays for judgment in its favor and against the Plaintiff plus costs.

## COUNT V
### Discrimination/Retaliation for Exercising FMLA Rights

85.    Plaintiff repeats and re-alleges paragraphs 1-34 as if they are set forth herein.

**ANSWER:** The defendant restates its answers to paragraphs 1-34 as its answer to paragraph 85 as though fully set forth herein.

86.    The FMLA guarantees eligible employees 12 weeks of leave in a 1-year period following

certain events, including the employee's own serious illness. 29 U.S.C. § 2612(a)(1).

**ANSWER:** Defendant admits the rights provided by the FMLA, but deny that said rights are completely or properly set forth in paragraph 86.

87. 29 C.F.R. § 825.220(c) provides that "[t]he Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights."

**ANSWER:** Defendant admits the provisions of the FMLA quoted in paragraph 87.

88. ARLINGTON HTS. is a covered employer under the FMLA because it is engaged in commerce or in an industry affecting commerce and employs 50 or more employees for each working day during each of 20 or more calendar workweeks in 2018 or the preceding calendar year. 29 U.S.C. § 2611(4)(A)(i); 29 C.F.R. § 825.104(a).

**ANSWER:** The defendant admits that it is a covered employer under the FMLA.

89. ESHOO was an employee of ARLINGTON HTS. that was eligible for FMLA leave because he was employed by ARLINGTON HTS. for at least 12 months and worked at least 1,250 hours during the 12-month period prior to his request for FMLA leave. 29 U.S.C. § 2611(2)(A); 29 C.F.R. § 825.110(a).

**ANSWER:** The defendant admits that Eshoo was eligible to make application under the FMLA, but denies all remaining allegations or inferences in paragraph 89.

90. ESHOO was eligible for FMLA Leave because he worked at least 1250 hours in a year at ARLINGTON HTS. worksite with at least 50 people in a 75-mile radius. 29 U.S.C. 2611(2)(B)(ii); 29 C.F.R. § 825.110(a).

**ANSWER:** The defendant admits that Eshoo was eligible to make application under the FMLA, but denies all remaining allegations or inferences in paragraph 90.

91. ESHOO was entitled to FMLA Leave because his father had a serious health condition and was incapable of self-care. 29 U.S.C. § 2611(7) and (12); 29 C.F.R. § 825.122(d).

**ANSWER:** The defendant has insufficient knowledge of the allegations in paragraph 91 and, therefore, denies the same.

92. ESHOO's father was incapable of self-care because he required active assistance or supervision to provide daily self-care in three or more activities of daily living or instrumental activities of daily living while he was under treatment for his condition. 29 C.F.R. § 825.122(d)(1).

**ANSWER:** Defendant has insufficient knowledge of the allegations in paragraph 92 and, therefore, denies the same.

93. A licensed physician certified that ESHOO's father's condition was a "serious health condition" within the meaning of the FMLA, a condition that ultimately claimed ESHOO's father's life. 29 U.S.C. § 2611(11); 29 C.F.R.§ 825.113.

**ANSWER:** Defendant has insufficient knowledge of the allegations in paragraph 93 and, therefore, denies the same.

94. ESHOO gave appropriate notice of his need to be absent from work by providing notice verbally of his need for FMLA leave, by providing the completed FMLA Certificate of Health Care Provider for Family Member's Serious Health Condition (Form WH-380-F from the U.S. Department of Labor), and the completed Village of Arlington Heights Family and Medical Leave Act Employee Request form. 29 U.S.C. § 2612(e)(2); 29 C.F.R. § 825.303.

**ANSWER:** Defendant admits Eshoo provided a FMLA Certificate of Health Care Provider for Family Member's Serious Health Condition (Form WH-380-F from the U.S. Department of Labor), and the completed Village of Arlington Heights Family and Medical Leave Act Employee Request form. 29 U.S.C. § 2612(e)(2); 29 C.F.R. § 825.303, but denies the remaining allegations in paragraph 94.

95. Within days of requesting FMLA leave and providing a completed written request form and medical provider certification regarding his FMLA leave request, ARLINGTON HTS. terminated ESHOO's employment for no legitimate reason. 29 C.F.R. § 825.220(c).

**ANSWER:** The defendant denies the allegations and inferences in paragraph 95.

96. ARLINGTON HTS. violated the FMLA because it improperly terminated ESHOO's employment with ARLINGTON HTS. because he requested leave he was entitled to under the FMLA. 29 C.F.R. § 825.220(c).

**ANSWER:** The defendant denies the allegations and inferences in paragraph 96.

97. In retaliation for ESHOO requesting FMLA leave he was entitled to under the FMLA, ARLINGTON HTS. demanded that ESHOO withdraw his EEOC Charge of Discrimination to receive his FMLA leave, and when ESHOO refused to withdraw his EEOC Charge of Discrimination, ARLINGTON HTS. terminated his employment. 29 C.F.R. § 825.220(c).

**ANSWER:** The Defendant denies the allegations and inferences in paragraph 97.

98. ARLINGTON HTS. did not have a legitimate reason for terminating ESHOO's employment and but for ESHOO's request for FMLA leave he was entitled to under the FMLA, ARLINGTON HTS. would not have terminated ESHOO's employment. 29 C.F.R. § 825.220(c).

**ANSWER:** The Defendant denies the allegations and inferences in paragraph 98.

99. Due to ARLINGTON HTS.' improper termination of ESHOO's employment, ESHOO suffered mental anguish, emotional distress, humiliation, emotional pain and suffering, inconvenience, lost wages and benefits, damage to his reputation, and other consequential damages.

**ANSWER:** The Defendant denies the allegations and inferences in paragraph 99.

100. The actions of ARLINGTON HTS. were intentional, willful, malicious and showed deliberate indifference to ESHOO's rights under the FMLA.

**ANSWER:** The Defendant denies the allegations and inferences in paragraph 100.

WHEREFORE, Defendant, VILLAGE OF ARLINGTON HEIGHTS, prays for judgment in its favor and against the Plaintiff plus costs.

THE DEFENDANT DEMANDS TRIAL BY JURY.

### **AFFIRMATIVE DEFENSES TO THE PLAINTIFF'S COMPLAINT AT LAW**

NOW COMES the Defendant, VILLAGE OF ARLINGTON HEIGHTS, by and through its attorneys, O'REILLY LAW OFFICES, LLC, and for its affirmative defenses to the Plaintiff's Complaint at Law, state as follows:

### **FIRST AFFIRMATIVE DEFENSE**

The plaintiff's claims should be barred or reduced to the extent that he failed to mitigate his damages.

### **SECOND AFFIRMATIVE DEFENSE**

The plaintiff's claims are barred to the extent that his claimed damages were caused by his own conduct or choices.

### **THIRD AFFIRMATIVE DEFENSE**

The plaintiff's claims are barred to the extent that they are premised upon alleged conduct that occurred more than 300 days prior to the date upon which he filed his EEOC Charges.

## FOURTH AFFIRMATIVE DEFENSE

The plaintiff's claims are barred to the extent that they exceed the scope of his EEOC Charges.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's racial, national origin, and/or other harassment and hostile work environment claims are barred by the affirmative defense to harassment liability articulated in Faragher v. City of Boca Raton, 524 U.S. 775 (1998) and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998) because Defendant (1) exercised reasonable care to prevent and correct promptly any harassing behavior and (2) Plaintiff failed to take advantage of any preventive or corrective opportunities provided by Defendant to avoid harm.

## SIXTH AFFIRMATIVE DEFENSE

Even if plaintiff were to prove that his alleged protected conduct played a motivating part in Defendant's decision to terminate his employment, Plaintiff's claims for retaliation under Title VII , the Illinois Human Rights Act, and FMLA, should be barred because Defendant would have made the same decision regardless of Plaintiff's alleged protected conduct.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims premised upon his termination are barred because Defendant's decision to terminate Plaintiff's employment was based upon a legitimate, non-discriminatory, non-retaliatory and non-protected reason, i.e., Plaintiff engaged in repeated misconduct, and thereby, failed to perform his job in a manner consistent with Defendant's reasonable and legitimate job expectations.

## EIGHTH AFFIRMATIVE DEFENSE

Defendant raises res judicata and collateral estoppel for all adjudicated claims and issues.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claim under the Family Medical Leave Act should be barred or reduced because Defendant made good faith efforts to comply with the requirements of the Family Medical Leave Act and Defendant had reasonable grounds for believing that any act or omission taken was not in violation of the Family Medical Leave Act.

## TENTH AFFIRMATIVE DEFENSE

The defendant acted in good faith in its efforts to comply with the Family Medical Leave Act and, therefore, the plaintiff is not entitled to liquidated damages under the Act.

Respectfully submitted:

_____
John F. O'Reilly

_____
Molly M. O'Reilly
O'REILLY LAW OFFICES, LLC
Attorneys for Defendant
1751 S. Naperville Road, Suite 101
Wheaton, IL 60189
Telephone: 630/665-4444
johnoreilly@oreillylawoffices.com
mollyoreilly@oreillylawoffices.com

### CERTIFICATE OF FILING/PROOF OF SERVICE

The undersigned, on oath, states she filed the Defendant, Village of Arlington Heights' Answer and Affirmative Defenses to the Plaintiff's Complaint at Law using the court's electronic filing system and served this Notice and documents herein by emailing a copy to the attorney listed below on December 17, 2020.

Brian R. Holman, Dennis H. Stefanowicz, Jr.
HOLMAN & STEFANOWICZ
Attorneys for the PLAINTIFF
233 South Wacker Drive, Suite 9305, Chicago, Illinois 60606
BRH@HS-ATTORNEYS.COM DHS@HS-ATTORNEYS.COM

_____
Molly M. O'Reilly
O'REILLY LAW OFFICES, LLC
Attorneys for Defendant
1751 S. Naperville Road, Suite 101
Wheaton, IL 60189
Telephone: 630/665-4444
johnoreilly@oreillylawoffices.com
mollyoreilly@oreillylawoffices.com